UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR J.M.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | No. 1:26-cv-04364-TLN-CSK<br><br>A# 226-167-343<br><br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Trevor J.M.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2] (ECF No. 1.) Respondent filed an opposition. (ECF No. 6.) For the reasons set forth below, the Petition is GRANTED and Respondent is ordered to IMMEDIATELY RELEASE Petitioner.

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The Court liberally construes Petitioner's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## I. Factual and Procedural Background

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner was admitted to the United States on May 24, 2018, on a J-1 visa. (ECF No. 1 at 9.) Petitioner then overstayed his visa. (ECF No. 6-1 at 2.) Petitioner has now lived in the United States for over seven years. (ECF No. 1 at 6.) He asserts he maintains a stable address, pays his taxes, and has strong family support here. (*Id.*) Petitioner has no criminal record. (*Id.*; ECF No. 6-1 at 2.)

On October 2, 2025, Petitioner states he was driving for a ride-share company when he was pulled over by a Border Patrol Agent and arrested because of his immigration status. (ECF No. 1 at 10; ECF No. 6-1 at 2.) Twenty-seven days after his arrest, an administrative warrant was issued for Petitioner's arrest, dated October 29, 2025. (ECF No. 6-1 at 7.) The warrant is not signed. (*Id.*) Also on October 29, 2025, Petitioner was served with a Notice to Appear initiating removal proceedings against him.[3] (ECF No. 6-1 at 5.)

On December 2, 2025, an immigration judge issued an order of removal for Petitioner. (ECF No. 6-3 at 41–42.) Petitioner timely appealed that decision to the Board of Immigration Appeals and the matter is pending.[4] (ECF No. 6 at 2.)

On December 3, 2025, an immigration judge denied Petitioner bond, finding "[Petitioner] failed to meet his burden to establish that his release would not pose a substantial risk of flight."[5] (ECF No. 6-2 at 3–4.) At the bond hearing, the immigration judge explained: "I am going to deny bond based on the heightened risk of flight presented due to a non-final order of removal entered against you. I can still set bond. . . . Nevertheless, given the posture, bond is denied." (ECF No. 8 at 6.) The immigration judge did not mention or consider alternatives to detention or consider bond amounts. (*See id.*)

---

[3] The parties appear to dispute whether Petitioner was served with a Notice to Appear on October 29, 2025 or November 2, 2025. (ECF No. 6-3 at 25.)

[4] Automated Case Information, U.S. Department of Justice, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation.

[5] At the bond hearing, the government stated it had no concern regarding Petitioner's danger to the community. (ECF No. 8 at 4.)

Petitioner has now been detained for over ten months. (ECF No. 1 at 6.) Petitioner challenges the lawfulness of his civil detention. (ECF No. 1.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[6] (ECF No. 1 at 6–7.) The parties agree Petitioner is detained under 8 U.S.C. § 1226(a). (ECF Nos. 1 at 7; 6 at 1.) However, Respondent contends Petitioner's detention is lawful and he has suffered no due process violation.[7] (ECF No. 6.)

---

6 Finding relief warranted under Petitioner's INA and Fifth Amendment claims, the Court declines to address Petitioner's additional claims in favor of judicial economy.

7 Additionally, Respondent argues the Petition should be denied because Petitioner failed to exhaust his administrative remedies as to his bond hearing. (ECF No. 6.) After considering the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), the Court finds prudential exhaustion is not required here. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's statutory or due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez*, 872 F.3d at 989 (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, the Court finds it unlikely the agency will correct its own mistake upon further review. Even if exhaustion were required, waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights. *See S.E.C. v. G. C. George Sec., Inc.*, 637

A. Immigration and Nationality Act

The parties agree 8 U.S.C. § 1226(a) governs Petitioner's detention. Respondent argues Petitioner's detention is lawful because "[h]e was properly detained under the authority of an administrative warrant" and a "DHS officer may arrest and detain a noncitizen, 'if he has reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" (ECF No. 6 at 1, 4 (citing 8 U.S.C. § 1357(a)(2)).) The Court notes here that the warrant was unsigned and issued 27 days after Petitioner's arrest. (ECF No. 6-1 at 7.)

A noncitizen may be arrested and detained under § 1226(a) only "on a warrant issued by the Attorney General . . . pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).") (emphasis in original). Additionally, the INA's implementing regulations provide: "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1) (emphasis added). Taken together, absent an exception, an administrative warrant must be issued prior to a noncitizen's arrest and it must be issued contemporaneously with, or subsequent to, a Notice to Appear initiating removal proceedings against the noncitizen.

Under the warrantless arrest exception, the government may arrest a noncitizen if the officer has reason to believe the noncitizen is in the country unlawfully and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). If an arrest is made under this exception, the noncitizen "shall be taken *without unnecessary delay* for examination before an officer of the Service having authority to examine [noncitizens] as to their right to enter or remain in the United States." *Id.* (emphasis added). The noncitizen shall also be placed in formal

---

F.2d 685, 688 n.4 (9th Cir. 1981); *see, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025).

removal proceedings and must be advised of the reasons for their arrest and the right to be represented. 8 C.F.R. § 287.3(c). Absent exigent circumstances, an initial custody determination and a decision to issue a warrant and Notice to Appear must occur within 48 hours of the arrest. *Id.*

Here, the Court finds Petitioner's detention was unlawful from its inception. First, the warrant is unsigned and, thus, invalid. *See Djiwaje v. Bondi*, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *3 (D. Nev. Apr. 6, 2026) ("Absent a signature, . . . the I-200 does not supply immigration authorities the power to arrest or detain noncitizens."). Moreover, the failure to issue and serve the warrant until 27 days post arrest further nullifies the warrant's notice purpose. Assuming *arguendo* the warrantless exception applied here (despite Respondent's failure to make a sufficient showing), such an exception does not persist indefinitely. The government was required to act without "unnecessary delay" and, within 48 hours of arrest, to provide an initial custody determination, warrant, and notice to appear. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(c). The government clearly did not comply with these requirements in waiting 27 days to act. And, despite this Court's Order requiring it (ECF No. 4), the government has not produced any evidence of an initial custody determination. These failures flagrantly violate § 1226(a) and its implement regulations, thus, the government unlawfully detained Petitioner. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful.").

Nor does a subsequent bond hearing cure the government's statutory violations. *See V.M. v. Albarran*, No. 1:26-CV-01280-TLN-DMC, 2026 WL 622185, at *3 (E.D. Cal. Mar. 5, 2026) ("The language of § 1226(a)'s warrant requirement is unequivocal and does not afford the Government forgiveness simply by providing a bond hearing after the fact."); *Romero-Perez v. Blanche*, No. 2:26-CV-01708-RFB-BNW, 2026 WL 1724752, at *4 (D. Nev. June 15, 2026) ("Critically, Respondents cannot cure [invalid warrant and failure to conduct custody determination] violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to prevent unjustified detention in the first

instance."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. Aug. 13, 2025) (citing *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528-AT, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioners of their freedom.).

Thus, Petitioner's detention is statutorily infirm, and the government violated the INA.

B. Fifth Amendment Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for seven years and has family and community ties in this country. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993;

*Zadvydas*, 533 U.S. at 693. Respondent does not dispute Petitioner's liberty interest. (*See* ECF No. 6.) Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondent's actions detaining him. The years Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Petitioner is now detained, separated from his family, unable to work, and he asserts he lacks bodily autonomy and has been assaulted while in detention. (ECF No. 1.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable and the probative value of additional procedural safeguards is high. As discussed above, the government failed to follow their own regulatory procedural safeguards in detaining Petitioner. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). "Where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*,

17 F.3d 511, 518 (2d Cir. 1993)).

Moreover, because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," there is nothing in the bond hearing record indicating the IJ determined Petitioner's detention is necessary to achieve those purposes or that those purposes outweigh Petitioner's constitutionally protected interest in remaining free from detention. *Hernandez*, 872 F.3d at 990. Rather, the record shows the IJ rejected Petitioner's request for release solely based on flight risk. (ECF No. 6-2 at 3.) The decision to continue Petitioner's detention on that finding alone does not pass constitutional muster. For Petitioner's detention to be justified by reason of flight risk, there must be some consideration of whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings. *See Hernandez*, 872 F.3d at 990-91; *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024) ("If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of those alternatives) is excessive in relation to those interests and unconstitutionally punitive."). Without a determination as to whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings, based on the record before the Court, Petitioner has not been provided with adequate due process to ensure the deprivation of his liberty is justified. Thus, the Court finds the risk that Petitioner has been erroneously deprived of his liberty is high and additional procedural safeguards were necessary.

Finally, the government's interest in detaining Petitioner without providing sufficient notice and hearing is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for the government. Indeed, they are the very processes required under 8 U.S.C. § 1226(a) and its implementing regulations, which Respondent agrees governs Petitioner's detention. Any burden associated with the provision of these processes does not outweigh

Petitioner's liberty interest and the risk of erroneous deprivation. Nor does Respondent claim the government would be unduly burdened. Although Respondent argues the government has an interest in executing a final order of removal, that interest is not yet ripe because Petitioner's order of removal is neither final nor executable. Moreover, that interest alone does not outweigh the other *Mathews* factors and nothing in this Court's relief will prevent the government from realizing such an interest if it does ripen.

Under *Mathews*, the Court finds Petitioner was owed notice and a hearing before a neutral decisionmaker to determine whether his detention was justified "at a meaningful time and in a meaningful manner." 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Respondents failed to provide timely notice in accordance with their regulations and they failed to provide a timely and constitutionally-sufficient hearing. Therefore, Respondents have violated the Fifth Amendment Due Process Clause in Petitioner's detention.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondent must IMMEDIATELY RELEASE Petitioner Trevor H.M. (**A# 226-167-343**) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions and provide him a copy of this Order. Respondent must file **a notice of compliance** with this Order **by August 19, 2026.**

2. Respondent is ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government shows by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) and Motion to

Grant TRO (ECF No. 10) are DENIED as moot.

4. The Clerk of Court is directed to serve this Order on **California City Correctional Center**.

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: August 17, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE